UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) | |
| v. | ) ) | Criminal No. 23-cr-10018-DJC |
| MATTHEW DAVIS, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                    February 13, 2023

### Introduction

Upon the motion of Defendant Matthew Davis ("Davis") to appeal the December 23, 2022 Order of Detention Pending Trial ("Detention Order"), D. 9, the Court has made an independent, *de novo* review, see United States v. Pierce, 107 F. Supp. 2d 126, 128 (D. Mass. 2000); United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990), of the record and counsel's arguments. For the reasons stated below, the Court DENIES the appeal of the Detention Order, D. 10, and the Detention Order, D. 9, shall remain in place.

### Standard of Review

In entering the Detention Order, the Court (Levenson, M.J.) concluded that no condition or combination of conditions would reasonably assure the safety of any other person and the community, D. 9 at 2-3, citing the weight of the evidence, Davis's prior criminal history, participation in criminal activity while on probation, parole or supervision, history of violence or use of weapons, prior attempt(s) to evade law enforcement and prior violations of probation, parole or supervised release, id., and explaining his considerations in reaching this conclusion. D. 9-1.

For such finding to warrant pretrial detention, there must be a showing, upon clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e); United States v. DiGiacomo, 746 F. Supp. 1176, 1181 (D. Mass. 1980). In determining whether there are conditions of release that will reasonably assure such safety as required, the Court must consider the factors under 18 U.S.C. § 3142(g) including the nature and circumstances of the offense charged; the weight of the evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger that the defendant's release would pose. The Court addresses these factors in the discussion below.

## Factual Allegations Leading to Present Charge

Davis is charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). D. 1, 15. This charge arose out of an incident involving Davis on October 26, 2022 in Boston, Massachusetts. D. 1-1 ¶ 5.[1] At approximately 1:45 p.m., Boston Police Department ("BPD") officers allegedly observed Davis, wearing a surgical mask, while crossing the median on Columbia Road and walking toward Powellton Road "in a surveillance-conscious manner" and "tak[ing] notice of unmarked CPD cruisers." Id. ¶ 6. They lost sight of Davis for a brief time and then next saw Davis (now with his mask pulled down) appear in a driveway on Powellton Road. Id. ¶ 7. One of the officer recognized him as a "a Morse Street gang associate" whom he had encountered numerous times before. Id. Some officers began talking to Davis whom they observed to be sweating profusely and "became overly excited in his mannerisms." Id. While this conversation was going on, other officers began to search the driveway where an unlocked Nissan Maxima was parked. Id. ¶ 8. As one officer opened the door

---

[1] Where an exhibit was filed on the docket, the Court cites it as "D. __." All of the exhibits proffered by both parties during the detention hearing have been made available to this Court and if not docketed, the Court has referenced them as "Gov. Ex. __" or "Def. Ex. __."

2

to the Nissan Maxima, Davis turned, dropped his backpack and began to flee while allegedly grabbing his waist and shouting "I got the blick!" Id. ¶ 8. (Officers understood "blick" to be slang for a firearm, id.). After a foot chase down multiple residential blocks, then through live traffic and into the Four Corners MBTA station, officers arrested Davis. Id. ¶ 8; Gov. Ex. 5-2. Officers later located "a black Taurus 9 mm semi-automatic firearm, loaded with 11 rounds of ammunition . . . under the passenger seat of the Nissan Maxima." D. 1-1 ¶ 9; Gov. Ex. 3. The owner of the Nissan Maxima denied owning this firearm or any firearms. D. 1-1 ¶ 10.

## Procedural History

On December 12, 2022, Davis was charged by criminal complaint in the present matter in federal court, D. 1. After a detention hearing on December 20, 2022, D. 8, the Court (Levenson, M.J.) issued an Order of Detention ruling that Davis be detained pending trial, determining that "there is no combination of conditions of release that would reasonably assure the safety of the community." D. 9-1 at 7. Davis has now appealed that detention order to this Court. D. 10. After briefing by both sides, D. 14, 20, and a review of the transcript and exhibits filed in connection with the detention hearing, the Court held a hearing and took the matter under advisement. D. 26.

## Discussion

*Nature and Circumstances of the Charge.* In considering the factors under 18 U.S.C. § 3142(g), the Court notes the following. As to the nature and circumstances of the criminal offense that Davis allegedly has committed, he has been charged as a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). The evidence regarding this charge is the loaded Taurus 9 mm pistol found in the Maxima on October 26, 2022, D. 1-1 ¶¶ 9-10, that both the firearm and ammunition (manufactured outside of Massachusetts) traveled in interstate or foreign commerce previously, id. ¶ 11; see Gov. Ex. 4, and Davis was previously convicted in 2009 in this

Court for possession of cocaine base with an intent to distribute and was sentenced to 84 months in prison. Id. ¶ 12; Gov. Ex. 7-1 at 7. The Court agrees with Judge Levenson that this firearm charge is also particularly troubling as Davis was on state pretrial release for a separate firearm-related offenses at the time that he committed this offense. D. 9-1 at 4.

*Weight of Evidence.* This charge in and of itself is a serious charge. Davis will face a term of imprisonment if convicted. 18 U.S.C. § 924(a)(8) (statutory maximum penalty of fifteen years for violation of 18 U.S.C. § 922(g)(1)). On the facts as alleged by the government, there is probable cause for the charge here. D. 9-1 at 2. Certainly, this is a constructive possession case as the firearm was not found on Davis's person or in a car associated with him. In that respect, it may be a triable case. Evidence, however, in the form of body cam(era) footage (from several cameras) of the October 26th incident showing Davis's presence in the driveway and immediate flight upon officers' opening the car door of the Maxima will be before a jury that will be instructed that it can consider circumstantial evidence (and, likely, consciousness of guilt) in determining if the government has proven its case against him beyond a reasonable doubt. See Gov. Ex. 5-2.

*Criminal History.* Davis has a criminal record, most notably, the possession of cocaine base with intent to distribute conviction noted above, Gov. Ex. 7-1 at 7, but also multiple defaults and/or probation or supervised release violations and arrests on still pending charges in state court. Gov. Ex. 6. On July 9, 2009, this Court (Stearns, J.) sentenced Davis to 84 months in prison and 5 years of supervised release. Gov. Ex. 7-1 at 7. Davis was released from prison on or about March 13, 2015. Gov. Ex. 6 at 14. Davis's release conditions at that time included a restriction against entering the "Morse Street area of Dorchester." United States v. Davis, No. 08-cr-10166 (D. Mass. Aug. 3, 2009), D. 43 at 4; see Gov. Ex. 7-2 at 3.

4

Less than a year after his release from BOP custody (and while still on supervised release), on September 15, 2015, Davis allegedly fired a gun multiple times at the driver's side window of a moving vehicle in Dorchester, causing it to crash. Commonwealth v. Davis, 487 Mass. 448, 449–50 (2021). In October 2017, a jury convicted Davis of armed assault with intent to murder and related charges for this shooting, id. at 451; D. 14-2 at 13, and he was sentenced to six years to six years and a day in state prison. Gov. Ex. 6 at 3. Following the conviction, this Court (Stearns, J.) revoked Davis's supervised release on his drug conviction, finding that Davis had violated the geographical restriction for the second time and imposed a term of 12 months and one day in custody. Davis, No. 08-cr-10166 (D. Mass. Oct. 27, 2017), D. 123; Gov. Ex. 7; see Davis, No. 08-cr-10166 (D. Mass. Apr. 30, 2015), D. 83 (imposing time served for Davis's April 8, 2015 violation of conditions of supervision release including the geographical restriction). The Supreme Judicial Court ("SJC") later overturned Davis's armed assault with intent to murder conviction on the basis that the trial judge erred in admitting expert testimony regarding Davis's speed as measured from the GPS ankle monitor he was wearing on the day of the shooting. Davis, 487 Mass. at 450, 457-58. The SJC concluded, however, that the trial judge properly admitted GPS location data placing Davis in the vicinity of the shooting. Id. at 459-60. Davis was released on bail on August 4, 2021 in that state case on conditions including that he reside with his brother in Medford, Massachusetts. D. 14-2 at 18. His second trial ended in a hung jury on November 23, 2021. Id. at 24. Davis currently awaits a third trial on this charge.[2]

A little over four months after his release from state custody, on December 21, 2021, Davis was arrested during a traffic stop when police officers discovered a gun in the backseat of a car

---

[2] The SJC recently ruled that double jeopardy does not bar his third trial. Davis v. Commonwealth, __ Mass. __, 2023 WL 163445, at *4 (Jan. 12, 2023).

that he was driving.  Gov. Ex. 9-2; D. 9-1 at 4.  Davis was arraigned on this possession of a firearm without a license on May 9, 2022 and, after a dangerousness hearing, released pending trial with GPS monitoring.  Gov. Ex. 9-1 at 4–5.  Accordingly, when Davis was arrested on the present charge by BPD in October 2022, he was already on condition of release for the two pending state charges.  D. 20 at 6 n.4.  In light of this third charge, the state court revoked Davis's bail, but re-released him on December 6, 2022 under conditions including house arrest at his mother's residence in Lynn, Massachusetts with GPS monitoring.  Gov. Ex. 9-1 at 11; D. 14-1.  Upon the adoption of this case by the U.S. Attorney's Office, Davis was charged as a felon in possession of a firearm and ammunition in this Court on December 12, 2022, D. 1, and the detention hearing at issue here followed.  D. 8.

Davis thus has three pending firearm-related charges: the present charge arising out of October 2022 conduct; the state firearm possession without a license charge arising out of conduct in December 2021, and the prior state armed assault with intent to murder charge arising out of September 2015 conduct for which Davis is awaiting his third trial.  In addition to the pending charges, Davis's former and current partners have sought and received civil restraining orders issued against him.  Gov. Ex. 6 at 1–2 (reflecting restraining orders issued for protection of his current partner for December 6, 2021 to December 19, 2022 and August 25, 2021 to September 8, 2021 and restraining orders for another woman for December 6, 2021 to January 2, 2023 and September 5, 2006  to October 10, 2007); Gov. Ex. 10-5; Gov. Ex. 10-6; Gov. Ex. 10-11.  As is true with the pending gun charges in this Court and state court, most of these restraining orders are not part of Davis's distant past, but also have arisen in the past two years.  On December 4, 2021, his current partner reported that Davis brandished a gun, pointed it at her stomach and threatened to kill her and their twins in a text message.  Gov. Ex. 10-5 at 3–5.  In an affidavit that she signed

6

on December 6, 2021, she indicated that Davis had assaulted and/or threatened her on October 31, November 17 and December 4, 2021. Gov. Ex. 10-6 at 3. On October 21, 2022, days before Davis's arrest on the present charge, his current partner reported that he was carrying a gun on a public street. Gov. Ex. 10-11. Although Davis disputes that the complaints by his current partner reflect any actual threats by him, they are not so easily dismissed when such reports have been made on multiple occasions, he has been the subject of multiple restraining orders sought by different partners, and the latest of these are occurring in the same time frame in which Davis has been charged with two, separate firearms offenses. That Davis has not been convicted since the 2009 drug conviction is less of a mitigating factor here given this backdrop.

*Personal History and Characteristics.* Certainly, the Court did not limit its consideration to the present charge, his criminal history and the pendency of serious charges against Davis. The Court also considered his personal history and characteristics. Davis is 34 years old and was born in Boston and is a lifelong resident of the city. D.14 at 2. Davis and his current partner have six-year-old twins and his mother and siblings continue to support him. See D. 14-4; Def. Ex. 2. In addition, Davis has a fifteen-year-old daughter with a former partner. Id. Davis submitted letters from his sister, his twin's former schoolteacher, and a social worker describing his positive relationship with his children, and he made a statement at the motion hearing, all of which this Court has considered. D. 14-3; D. 14-4; Def. Ex. 2. Davis proposes a release plan in accordance with the conditions set by the state court in December, including house arrest at his mother's residence in Lynn with GPS monitoring and biweekly wellness checks with a social worker. D.

14 at 1–2; D. 14-1; Def. Ex. 2. Davis's social worker opines that a recently obtained a full-time job in Lynn will provide Davis with more structure and stability if he is released. Def. Ex. 2 at 2.[3]

*Nature and Seriousness of Danger to the Community.* Based upon a *de novo* review of these factors under Section 3142(g), this Court concludes, by clear and convincing evidence, that there is no condition or combination of conditions that would reasonably assure the safety of others and the community and that such release would pose a serious risk of harm to same. The Court has considered the conditions that Davis has proposed for his release, including home confinement at his mother's house, GPS monitoring and continued work with a social worker. D. 14 at 1–2; Def. Ex. 2. Even in combination, however, these conditions would not assure the safety of others and the community against the backdrop of the other factors. Davis violated the geographical restrictions of his ongoing supervised release at least twice within six months of release from his drug conviction, Davis, No. 08-cr-10166, D. 83, 123, and he has violated the conditions of his state pretrial release with new criminal conduct not once, but twice in the last two years. The state court's attempt to have Davis stay in Medford in August 2021 did not prevent Davis from being arrested in Dorchester with a firearm in December of that year. See D. 14-2 at 18; Gov. Ex. 9-3.[4] At base, Davis does not just have a history of violating conditions of supervised release or pretrial

---

[3] Other evidence offered by Davis bears upon whether he is a flight risk, rather than the danger he poses to others in his community, such as his voluntary appearance in court after being released from custody in August 2021. See D. 11 at 29:7–30:15; D. 14-2 at 18. The Court bases its decision on the risk of dangerousness posed by Davis's release rather than any potential risk of flight as it concludes that the government has not met its burden that Davis poses a flight risk.

[4] The Court is mindful that a state court continued Davis's pre-trial release on conditions of house arrest at his mother's house in Lynn, D. 14-1, the residence where he apparently was residing at the time of his October 2022 arrest, Gov. Ex. 2 at 2, and his December 21, 2021 arrest, Gov. Ex. 9-3 at 3. As, however, this Court has an obligation to review the Detention Order *de novo*, it is also true that this Court is not bound by another tribunal's findings, particularly where the Court must determine if the government has meant its burden in seeking Davis's pretrial detention here based upon the full record presented to this Court.

release, but doing so with the commission of firearm-related offenses. While Davis's current partner reported to Probation that she does not presently fear him and may have reported certain incidents to the police to anger him when he was dating other women, she does not claim that her multiple, detailed reports to police were untruthful. Having conducted an independent review of the record, this Court agrees with Judge Levenson that Davis's "track record suggests that he poses an imminent danger to the community if he has a firearm, and that he is ready, willing, and able to get firearms while subject to conditions of release." D. 9-1 at 4. For all of these reasons and after *de novo* review, the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of others and the community.

## Conclusion

Accordingly, the Court DENIES the appeal of the Detention Order, D. 14, and that Detention Order, D. 9, shall remain in place pending trial.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge